Filed 1/18/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| McMILLIN ALBANY LLC et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | S229762 |
| v. | ) | |
| | ) | Ct.App. 5 F069370 |
| THE SUPERIOR COURT OF KERN COUNTY, | ) | |
| | ) | |
| | ) | Kern County Super. Ct. |
| Respondent; | ) | No. S-1500-CV-279141 |
| | ) | |
| CARL VAN TASSEL et al., | ) | |
| | ) | |
| Real Parties in Interest. | ) | |
| _____ | ) | |

In *Aas v. Superior Court* (2000) 24 Cal.4th 627, 632 (*Aas*), this court held that the economic loss rule bars homeowners suing in negligence for construction defects from recovering damages where there is no showing of actual property damage or personal injury. We explained that requiring a showing of more than economic loss was necessary to preserve the boundary between tort and contract theories of recovery, and to prevent tort law from expanding contractual warranties beyond what home builders had agreed to provide. (*Id.* at pp. 635–636; see *Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 18.) We emphasized that the Legislature was free to alter these limits on recovery and to add whatever additional homeowner protections it deemed appropriate. (*Aas*, at pp. 650, 653.)

Two years later, spurred by *Aas* and by lobbying from homeowner and construction interest groups, the Legislature passed comprehensive construction defect litigation reform. (Stats. 2002, ch. 722, principally codified at Civ. Code, §§ 895–945.5 (commonly known as the Right to Repair Act, hereafter the Act); all further unlabeled statutory references are to the Civil Code.) The Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury.

We are asked to decide whether the lawsuit here, a common law action alleging construction defects resulting in both economic loss and property damage, is subject to the Act's prelitigation notice and cure procedures. The answer depends on the extent to which the Act was intended to alter the common law — specifically, whether it was designed only to abrogate *Aas*, supplementing common law remedies with a statutory claim for purely economic loss, or to go further and supplant the common law with new rules governing the method of recovery in actions alleging property damage. Based on an examination of the text and legislative history of the Act, we conclude the Legislature intended the broader displacement. Although the Legislature preserved common law claims for personal injury, it made the Act the virtually exclusive remedy not just for economic loss but also for property damage arising from construction defects. The present suit for property damage is therefore subject to the Act's prelitigation procedures, and the Court of Appeal was correct to order a stay until those procedures have been followed.

## I.

Plaintiffs Carl and Sandra Van Tassel and several dozen other homeowners (collectively the Van Tassels) purchased 37 new single-family homes from developer and general contractor McMillin Albany LLC (McMillin) at various times after January 2003. In 2013, the Van Tassels sued McMillin, alleging the homes were defective in nearly every aspect of their construction, including the foundations, plumbing, electrical systems, roofs, windows, floors, and chimneys. The operative first amended complaint included common law claims for negligence, strict product liability, breach of contract, and breach of warranty, and a statutory claim for violation of the construction standards set forth in section 896. The complaint alleged the defects had caused property damage to the homes and economic loss due to the cost of repairs and reduction in property values.

McMillin approached the Van Tassels seeking a stipulation to stay the litigation so the parties could proceed through the informal process contemplated by the Act. (§§ 910–938.) That process begins with written notice from the homeowner to the builder of allegations that the builder's construction falls short of the standards prescribed by the Act. (§ 910.) The builder must acknowledge receipt (§ 913) and thereafter has a right to inspect and test any alleged defect (§ 916). Following any inspection and testing, the builder may offer to repair the defect (§ 917) or pay compensation in lieu of a repair (§ 929). The Act regulates the procedures for any repair, authorizes mediation, and preserves the homeowner's right to sue in the event the repair is unsatisfactory and no settlement can be reached. (§§ 917–930.)

The Van Tassels elected not to stipulate to a stay and instead dismissed their section 896 claim. McMillin moved for a court-ordered stay. (§ 930, subd. (b) ["If the claimant does not conform with the requirements of this chapter, the builder may bring a motion to stay any subsequent court action or other

3

proceeding until the requirements of this chapter have been satisfied."].)  In response, the Van Tassels argued that because the complaint now omitted any claim under the Act, the Act's informal prelitigation process did not apply.  The Van Tassels cited *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98, 101 (*Liberty Mutual*), which held that the Act was adopted to provide a remedy for construction defects causing only economic loss and did not alter preexisting common law remedies in cases where actual property damage or personal injuries resulted.

The trial court denied the motion for a stay.  It observed that the issues decided in *Liberty Mutual* might be the subject of further appellate inquiry, but concluded it was bound to follow the case.  Recognizing that the question was not free from doubt, the trial court certified the issue as one worthy of immediate review.  (Code Civ. Proc., § 166.1.)  McMillin sought writ relief.

The Court of Appeal granted the petition and issued the writ, disagreeing with *Liberty Mutual* and another case that had followed it, *Burch v. Superior Court* (2014) 223 Cal.App.4th 1411.  The court examined the text and history of the Act and concluded that the Act was meant to at least partially supplant common law remedies in cases where property damage had occurred.  In the Court of Appeal's view, "the Legislature intended that all claims arising out of defects in residential construction" involving post-2003 sales of new houses "be subject to the standards and the requirements of the Act."  Accordingly, the Court of Appeal held the Act's prelitigation resolution process applied here even though the Van Tassels had dismissed their statutory claim under the Act.  The court concluded that McMillin is entitled to a stay pending completion of the prelitigation process.

We granted review.

4

**II.**

In deciding whether a statutory scheme alters or displaces the common law, we begin with a presumption that the Legislature did not so intend. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 669 (*Fahlen*); *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 (*Health Facilities*).) To the extent possible, we construe statutory enactments as consonant with existing common law and reconcile the two bodies of law. (*Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 326; *People v. Ceja* (2010) 49 Cal.4th 1, 10.) Only " 'where there is no rational basis for harmonizing' " a statute with the common law will we conclude that settled common law principles must yield. (*Health Facilities*, at p. 297.)

Although the presumption against displacement of the common law is strong, abrogation of the common law does not require an express declaration; it is enough that "the language or evident purpose of the statute manifest a legislative intent to repeal" a common law rule. (*Health Facilities*, *supra*, 16 Cal.4th at p. 297; see *Fahlen*, *supra*, 58 Cal.4th at p. 669 [abrogation may be found " ' "by express declaration or by necessary implication" ' "].) In *Martinez v. Combs* (2010) 49 Cal.4th 35, for example, we canvassed the "full historical and statutory context" surrounding enactment of statutory minimum wage protections and concluded that it "show[ed] unmistakably" that the Legislature intended Industrial Welfare Commission definitions of the employment relationship to control, even when those definitions might depart from the common law. (*Id.* at p. 64; see *Verdugo v. Target Corp.*, *supra*, 59 Cal.4th at pp. 326–327 [giving other examples where the Legislature clearly but implicitly abrogated the common law].)

As explained below, the statute here leaves the common law undisturbed in some areas, expressly preserving actions for breach of contract, fraud, and personal injury. (§ 943, subd. (a).) In other areas, however, the Legislature's

5

intent to reshape the rules governing construction defect actions is patent. Where common law principles had foreclosed recovery for defects in the absence of property damage or personal injury (*Aas*, *supra*, 24 Cal.4th at p. 632), the Act supplies a new statutory cause of action for purely economic loss (§§ 896–897, 942–944). And, of direct relevance here, even in some areas where the common law had supplied a remedy for construction defects resulting in property damage but not personal injury, the text and legislative history reflect a clear and unequivocal intent to supplant common law negligence and strict product liability actions with a statutory claim under the Act.

## A.

We begin with the text of the Act, which "comprehensively revises the law applicable to construction defect litigation for individual residential units" within its coverage. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 382, fn. 16.) The Act adds title 7 to division 2, part 2 of the Civil Code. (§§ 895–945.5.) That title consists of five chapters. Chapter 1 establishes definitions applicable to the entire title. (§ 895.) Chapter 2 defines standards for building construction. (§§ 896–897.) Chapter 3 governs various builder obligations, including the warranties a builder must provide. (§§ 900–907.) Chapter 4 creates a prelitigation dispute resolution process. (§§ 910–938.) Chapter 5 describes the procedures for lawsuits under the Act. (§§ 941–945.5.)

Section 896, which codifies a lengthy set of standards for the construction of individual dwellings, begins with a preamble describing the intended effect of those standards. As relevant here, the preamble says: "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a builder . . . shall, except as specifically set forth in

6

this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title. This title applies to original construction intended to be sold as an individual dwelling unit. As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law." (§ 896.)

Three aspects of this text are instructive. First, the provision applies to "any action" seeking damages for a construction defect, not just any action under the title. (§ 896.) This suggests an intent to create not merely *a* remedy for construction defects but *the* remedy. Second, "the claimant's claims or causes of action shall be limited to violation of[] the following standards, except as specifically set forth in this title." (*Ibid.*) This express language of limitation means that a party seeking damages for a construction defect may sue for violation of these standards, and *only* violation of these standards, unless the Act provides an exception. This clause evinces a clear intent to displace, in whole or in part, existing remedies for construction defects. Third, "[t]his title applies to original construction intended to be sold as an individual dwelling unit," but "[a]s to condominium conversions, this title does not apply to or does not supersede any other statutory or common law." (*Ibid.*) The Act governs claims concerning stand-alone homes; for such disputes, the Act's provisions do "supersede any other statutory or common law" except as elsewhere provided.

The Van Tassels argue that section 896 should be read to refer and apply only to claims concerning defects that have yet to cause damage. But no such limitation appears in the text, which says the Act applies to "any action seeking recovery of damages arising out of" construction defects. (§ 896.) The Van Tassels also object that if section 896 is read to apply broadly, the shorter limitations periods it imposes for certain types of defects (e.g., § 896, subds. (e)–(g)) may limit homeowners' ability to recover. But there is nothing absurd about

7

accepting these limitations periods at face value, and they supply no special reason to disregard the import of the remainder of the statute.

We turn next to chapter 5 (§§ 941–945.5), which contains key provisions governing the damages recoverable in an action under the Act and the extent to which the Act provides the exclusive vehicle for recovery of such damages. The Legislature was well aware of the main categories of damages involved in construction defect actions (economic loss, property loss, death or personal injury) and their treatment under existing law. The major stakeholders on all sides of construction defect litigation participated in developing the Act. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 3, 8.) The Legislature also expressly considered *Aas* and its rule requiring property damage or personal injury, not just economic loss, for any tort suit alleging a construction defect. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, pp. 2–3; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 1–4.) Informed by the various stakeholders' concerns, the Legislature enacted provisions that reflect a conscious effort to address how and when various categories of damages would be recoverable going forward.

The provisions of chapter 5 make explicit the intended avenues for recouping economic losses, property damages, and personal injury damages. Section 944 defines the universe of damages that are recoverable in an action under the Act. (§ 944 ["If a claim for damages is made under this title, the homeowner is only entitled to damages for" a series of specified types of losses].) In turn, section 943 makes an action under the Act the exclusive means of recovery for damages identified in section 944 absent an express exception: "Except as provided in this title, no other cause of action for a claim covered by

8

this title or for damages recoverable under Section 944 is allowed." (§ 943, subd. (a).) In other words, section 944 identifies what damages *may* be recovered in an action under the Act, and section 943 establishes that such damages *may only* be recovered in an action under the Act, absent an express exception.

The list of recoverable damages in section 944 and the list of exceptions in section 943 have different consequences for recovery of economic losses, personal injury damages, and property damages:

*Economic Loss.* As noted, before the Act, tort recovery of purely economic losses occasioned by construction defects was forbidden by this court's decision in *Aas*. (*Aas*, *supra*, 24 Cal.4th at p. 632.) Section 944 now specifies that various forms of economic loss are recoverable in an action under the Act. (§ 944 [listing among recoverable damages "the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, . . . the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, [and] reasonable investigative costs for each established violation . . . ."].) Consequently, a party suffering economic loss from defective construction may now bring an action to recover these damages under the Act without having to wait until the defect has caused property damage or personal injury. Were there any doubt, section 942 makes clear that "[i]n order to make a claim for violation of the" Act's standards, "[n]o further showing of causation or damages is required to meet the burden of proof regarding a violation of a standard."

*Personal Injury.* In contrast, personal injury damages are not listed as a category recoverable under the Act. (§ 944.) This omission places personal injury claims outside the scope of section 943, subdivision (a), which makes an action

9

under the Act the exclusive remedy for those damages listed in section 944. To make the point even clearer, the Legislature also included personal injury claims in a list of claims that are exempt from the exclusivity of the Act. (§§ 931 [listing any action for "personal injuries" among the causes of action not covered by the Act], 943, subd. (a) ["this title does not apply to . . . any action for . . . personal injury . . ."].) Thus, common law tort claims for personal injury are preserved.

*Property Damage*. As with economic losses, the Act expressly includes property damages resulting from construction defects among the categories of damages recoverable under the Act. (§ 944 [a homeowner may recover "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards"]; see § 896 [the Act applies to "recovery of damages arising out of, or related to" construction defects].) This places claims involving property damages within the purview of section 943, subdivision (a), which makes a claim under the Act the exclusive way to recover such damages. And unlike personal injury claims, negligence and strict liability claims for property damages are not among the few types of claims expressly excepted from section 943's exclusivity. (§ 943, subd. (a); see § 931 [noting claims for personal injury, but not property damage, fall outside the Act's coverage].)

To sum up this portion of the statutory scheme: For economic losses, the Legislature intended to supersede *Aas* and provide a statutory basis for recovery. For personal injuries, the Legislature preserved the status quo, retaining the common law as an avenue for recovery. And for property damage, the Legislature replaced the common law methods of recovery with the new statutory scheme. The Act, in effect, provides that construction defect claims not involving personal injury will be treated the same procedurally going forward whether or not the underlying defects gave rise to any property damage.

10

As with section 896, the Van Tassels argue that section 943, subdivision (a) should be read to make the Act the exclusive remedy only for claims concerning defects that have yet to cause damage. But this view cannot be reconciled with the portion of section 943, subdivision (a) making the Act the exclusive means of recovering any of the categories of damages listed in section 944 — categories that, as noted, include resulting damages from construction defects, not just economic loss. Moreover, if the only purpose of the Act's creation of a statutory claim was to abrogate the *Aas* rule for negligence claims and provide for recovery of economic losses, the Act's provisions would have had no effect on actions for breach of contract, fraud, or personal injury. Had that been the limit of the Legislature's intent, the inclusion of an exception expressly preserving such claims would have been unnecessary. (§ 943, subd. (a) ["this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute"].)

Section 897, which applies to elements of construction not otherwise addressed in section 896, is also relevant. Although section 896 was intended to be comprehensive, section 897 provides a supplemental standard for any building components that section 896 may have overlooked: Any part not otherwise covered is defective and "actionable if it causes damage." This use of damage to measure defectiveness is not unusual; many of the more specific standards in section 896 likewise use the causation of damage as part of the test for whether a given part is defective. (§ 896, subds. (a)(3), (6), (7), (9), (11), (12), (18), (c)(1).) Thus, a claim under the Act, whether predicated on a violation of section 896 or section 897, often may involve circumstances where an alleged defect has resulted in property damage.

The Van Tassels read section 897 as providing that any defect covered by that section can form the basis of a suit under the common law rather than under

11

the Act. Again, the statutory text and context do not support this reading. First, when the Legislature intended to preserve common law claims as a complement to claims under the Act, it did so expressly. (§§ 931, 943, subd. (a); see *Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 894.) No similar language appears in section 897 to suggest violations of its catchall standard may be pursued in a common law negligence or strict liability action outside the parameters of the Act. Second, other parts of the Act treat sections 896 and 897 as a unified and connected whole. (See §§ 910 [requiring exhaustion of prelitigation procedures in all cases where "a violation of the standards set forth in Chapter 2 [§§ 896–897]" is alleged], 942 [establishing rules for "a claim for violation of the standards set forth in Chapter 2 [§§ 896–897]"].) Such treatment is at odds with the Van Tassels' proposal that section 897, unlike section 896, may be enforced at common law. Were we to agree with the Van Tassels that a defect standard based on damage causation reflects a legislative intent to preserve a common law claim for such defects, this would create difficulties in applying section 896. That section measures defectiveness for some but not all building components by whether damage was caused and, under the Van Tassels' reading, would support a common law claim for some but not all standard violations. (Compare § 896, subds. (a)(3), (6), (7), (11), (12), (18), (c)(1) [setting out standards for various components that depend on damage] with *id.*, subds. (a)(4), (14)–(17), (b)(1)–(4), (d)–(f) [setting out standards for other components that do not depend on damage].) Had the Legislature intended such a selective preservation of common law remedies, we think it would have said so, as it did elsewhere.

Against these textual inferences, the Van Tassels point to other portions of the Act that purportedly preserve common law claims and confine the Act's prelitigation procedures to statutory claims under the Act. (See §§ 910, 914, subd. (a), 942.) Central to their argument is section 910, which says: "Prior to

12

filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896), the claimant shall initiate the following prelitigation procedures . . . ." The Van Tassels contend that this passage limits the applicability of the Act's prelitigation procedures to cases where the complaint formally "allege[s]" the defendant has "contributed to a violation of the standards" set forth in the Act. A common law claim for property damage that does not contain such formal allegations, they argue, is exempt from the Act's prelitigation procedures. But this reading of the statute is difficult to reconcile with section 943, subdivision (a), which says: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed." In other words, section 943 disallows claims other than those predicated on the Act's standards, with exceptions not applicable here. And if a claim for property damage alleges a violation of section 896 or section 897, then section 910 by its terms subjects the claim to the Act's prelitigation procedures.

Finally, the Van Tassels argue that the presumption against abrogation of the common law requires an express statement that the Legislature intended to displace existing remedies. It does not. (*Ante*, at p. 5.) Moreover, both sides agree that the Legislature in passing the Act sought to abrogate the common law, even though the text contains no express statement of that intent. They differ only in degree: The Van Tassels contend that the Legislature sought only to overrule the common law limits on recovery identified in *Aas*, whereas McMillin contends that the Legislature went further in supplanting certain common law claims with statutory ones. As explained above, we agree with McMillin's reading of the Act.

13

**B.**

The legislative history of the Act confirms that displacement of parts of the existing remedial scheme was no accident, but rather a considered choice to reform construction defect litigation.

First, language in the Legislature's analyses of the Act's effects reflects an intent that the Act would govern not only no damage cases, but cases where property damage had resulted. The Act's standards were designed so that "except where explicitly specified otherwise, liability would accrue under the standards regardless of whether the violation of the standard had resulted in actual damage or injury." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4.) Both halves of this intended application are significant: Liability under the standards would attach even in the absence of actual damage, thus effectively abrogating *Aas*. And liability under the standards would also attach in cases of actual damage; in other words, the Legislature anticipated that passage of the Act would result in standards that governed liability even when violation of the standards *had* resulted in property damage. The Legislature thus recognized and intended that claims under the Act would cover territory previously in the domain of the common law.

Second, the Act "establishes a mandatory process prior to the filing of a construction defect action," with the "major component of this process" being "the builder's absolute right to attempt a repair prior to a homeowner filing an action in court." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 5.) These purposes, the creation of a mandatory prelitigation process and the granting of a right to repair, would be thwarted if we were to read the Act to permit homeowners to continue to sue as before at common law, without abiding by the procedural requirements of the Act, for construction defect claims involving damages other than economic loss.

14

Third, although there is no doubt that the Act had the intended effect of overriding *Aas*'s limits on construction defect actions, that effect was treated in both the Assembly and Senate as one consequence of the overall reform package, not as the principal goal of the Act. The Assembly Committee on the Judiciary described as a "principal feature of the bill" the establishment of construction defect standards and then observed that one consequence of the "standards [is to] effectively end the debate over the controversial decision in the *Aas* case." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 26, 2002, p. 3; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 3.) In a similar vein, the Senate Committee on the Judiciary described the Act as creating standards that would "govern any action seeking recovery of damages arising out of or related to construction defects" and then noted that "[i]n addition" the rules for liability under the standards would "essentially overrule the *Aas* decision and, for most defects, eliminate that decision's holding that construction defects must cause actual damage or injury prior to being actionable." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4.) If the Van Tassels' interpretation of the Act were correct, then the legislative analyses certainly bury the lede.

In sum, the legislative history confirms what the statutory text reflects: the Act was designed as a broad reform package that would substantially change existing law by displacing some common law claims and substituting in their stead a statutory cause of action with a mandatory prelitigation process.

## III.

Echoing an argument made by the Court of Appeal in *Liberty Mutual*, *supra*, 219 Cal.App.4th 98, the Van Tassels contend that the detailed prelitigation

15

procedures and timelines set out in chapter 4 (§§ 910–938) cannot rationally be applied to defects that create a sudden loss requiring emergency repairs. From this, they infer that the Act and its procedures were never intended to extend to claims for defects resulting in actual damage. We are not presented with a case in which any party had to take emergency action. But the emergency scenario does not give us reason to doubt that the Act applies to property damage cases.

The Act requires a homeowner, before suing, to provide a builder with written notice and a general description of an alleged construction defect. (§ 910, subd. (a).) The Act then subjects the builder to a series of deadlines by which it must acknowledge receipt, supply relevant records, and, if it chooses, inspect, offer to repair the defect, and commence repairs. (§§ 912–913, 916–917, 921.) In nonemergency cases, there is no tension between these provisions and the portions of the Act that extend its application to cases involving property damage. In the absence of delay risking a worsening of any damage, a homeowner will have time to give the requisite notice and await the builder's response. If the builder drags its feet in a way that exacerbates damage, the Act protects the homeowner. (See § 944 [builder is liable for "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards"]; *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1478 (*KB Home*) ["Since the builder is required to compensate the homeowner for consequential damages, including the cost of repair of actual property damage caused by a construction defect, any delay up to the statutory maximum risks increasing the builder's liability."].)

Defects that trigger sudden ongoing, escalating damage present a more difficult problem. The Act does not expressly address how its operation might change in such unusual circumstances. The minimal requirements of formal written notice and awaiting a builder response could be onerous in cases where a

16

construction failure creates a need for emergency action by a homeowner or the homeowner's insurer. But we need not read the notice requirement in isolation. The Act also imposes on homeowners a general duty to act reasonably in order to mitigate losses. (See § 945.5, subd. (b) [affording builders an affirmative defense where losses are the result of "a homeowner's unreasonable failure to minimize or prevent those damages in a timely manner"].) A failure to give formal written notice before taking any other action might well be excused in circumstances where a homeowner has acted reasonably to mitigate losses and has provided informal notice, and subsequent written notice, in a manner that is as timely and effective as reasonably practicable under the circumstances. (See *Lewis v. Superior Court* (1985) 175 Cal.App.3d 366, 378 [construing statute of limitations for filing of complaint to permit an exception "based upon impossibility where catastrophic fire or earthquake or other events might render it physically impossible" to comply]; cf. *KB Home*, *supra*, 223 Cal.App.4th 1471 [notice requirement not excused where homeowner alerted insurer, but not builder, and insurer completed repairs three months later before finally notifying builder].)

A similar principle of reasonableness must be applied to the interpretation of the builder's rights and obligations. Although the Act establishes various maximum time periods in which the builder may respond, inspect, offer to repair, and commence repairs (§§ 913, 916–917, 921), the builder avails itself of the full time allowed by the Act at its peril. The builder is liable for the damages its construction defects cause, and even when a homeowner has acted unreasonably in failing to limit losses, the builder remains liable for "damages due to the untimely or inadequate response of a builder to the homeowner's claim." (§ 945.5, subd. (b).) What constitutes a timely response will vary according to the circumstances, and the maximum response periods set forth by the Act do not necessarily insulate a builder from damages when the builder has failed to take

17

remedial action as promptly as is reasonable under the circumstances. The Act's liability provisions thus supply builders and homeowners clear incentives to move quickly to minimize damages when alerted to emergencies. (*KB Home*, *supra*, 223 Cal.App.4th at p. 1478.)

The Van Tassels highlight section 930, subdivision (a), which requires "[t]he time periods . . . in this chapter . . . to be strictly construed, . . . unless extended by the mutual agreement of the parties." But this directive simply ensures that the time periods are followed when the parties have not agreed otherwise. It does not mean that the parties are necessarily immune from liability for failing to take swifter action when circumstances dictate.

Because this case does not involve a catastrophic occurrence or emergency repairs, we need not decide definitively how the Act would apply on such facts. But our review of the Act's provisions reveals enough play in the joints to suggest that the Act can be adapted well enough to extreme circumstances. The tension between the Act's timelines and the occasional need for expeditious action in exigent circumstances does not provide a sufficiently compelling reason to disregard the numerous indications in the Act's text and history that the Legislature clearly intended it to govern cases involving actual property damage. We disapprove *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC*, *supra*, 219 Cal.App.4th 98, and *Burch v. Superior Court*, *supra*, 223 Cal.App.4th 1411, to the extent they are inconsistent with the views expressed in this opinion.

## IV.

The Van Tassels voluntarily dismissed without prejudice their cause of action for violation of section 896's standards. Even so, the operative complaint includes claims resting on allegations that McMillin defectively constructed the foundations, plumbing, roofs, electrical conduits, framing, flooring, and walls of the plaintiffs' homes. This suit remains an "action seeking recovery of damages

18

arising out of, or related to deficiencies in, the residential construction" of the plaintiffs' homes (§ 896), and McMillin's liability under the Van Tassels' negligence and strict liability claims depends on the extent to which it violated the standards of sections 896 and 897. Thus, the Van Tassels were required to initiate the prelitigation procedures provided for in the Act. (See *Elliott Homes, Inc. v. Superior Court* (2016) 6 Cal.App.5th 333, 341 ["[W]here the complaint alleges deficiencies in construction that constitute violations of the standards set out in chapter 2 of the Act, the claims are subject to the Act, and the homeowner must comply with the prelitigation procedure, regardless of the theory of liability asserted in the complaint."].)

In holding that claims seeking recovery for construction defect damages are subject to the Act's prelitigation procedures regardless of how they are pleaded, we have no occasion to address the extent to which a party might rely upon common law principles in pursuing liability under the Act. Nor does our holding embrace claims such as those for breach of contract, fraud, or personal injury that are expressly placed outside the reach of the Act's exclusivity. (§ 943, subd. (a).) That limit does not help the Van Tassels' position here, for while the complaint includes breach of contract and breach of warranty claims, it also includes claims for strict liability and negligent failure to construct defect-free homes, to which no statutory exception applies. Accordingly, the Van Tassels must comply with the Act's prelitigation procedures before their suit may proceed. Because the Van Tassels have not yet done so, McMillin is entitled to a stay. (§ 930, subd. (b).)

19

## CONCLUSION

We affirm the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**LUI, J.**<sup>*</sup>

---

\* Presiding Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** McMillin Albany LLC v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 239 Cal.App.4th 1132
**Rehearing Granted**

_____

**Opinion No.** S229762
**Date Filed:** January 18, 2018

_____

**Court:** Superior
**County:** Kern
**Judge:** David R. Lampe

_____

**Counsel:**

Borton Petrini, Calvin R. Stead and Andrew M. Morgan for Petitioners.

Ulich Ganion Balmuth Fisher & Feld and Donald W. Fisher as Amici Curiae on behalf of Petitioners.

Donahue Fitzgerald, Kathleen F. Carpenter, Amy R. Gowan; Ware Law and Dee A. Ware for California Building Industry Association, Building Industry Legal Defense Foundation and California Infill Federation as Amici Curiae on behalf of Petitioners.

Ryan & Lifter, Jill J. Lifter; Chapman, Glucksman Dean Roeb & Barger and Glenn T. Barger for Association of Defense Counsel of Northern California and Nevada and Association of Southern California Defense Counsel as Amici Curiae on behalf of Petitioners.

Hirsch Closson, Robert V. Closson and Jodi E. Lambert for California Professional Association of Specialty Contractors as Amicus Curiae on behalf of Petitioners.

Newmeyer & Dillion, Alan H. Packer, J. Nathan Owens, Paul L. Tetzloff and Jeffrey R. Brower for Leading Builders of America as Amicus Curiae on behalf of Petitioners.

Epstein Grinnell & Howell, Anne L. Rauch; Berding & Weil and Tyler P. Berding for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Milstein Adelman, Milstein Adelman Jackson Fairchild & Wade, Mark A. Milstein, Fred M. Adelman and Mayo L. Makarcyzk for Real Parties in Interest.

Benson Legal, Susan M. Benson; Williams | Palecek Law Group and Jason P. Williams for The National Association of Subrogation Professionals as Amicus Curiae on behalf of Real Parties in Interest.

**Page 2 – S229762 – counsel continued**

**Counsel:**

Law Offices of Brian J. Ferber, Brian J. Ferber; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers as Amici Curiae on behalf of Real Parties in Interest.

Horvitz & Levy, H. Thomas Watson and Daniel J. Gonzalez for MWI, Inc., as Amicus Curiae on behalf of Real Parties in Interest.

Kasdan Lippsmith Weber Turner, Kenneth S. Kasdan, Michael D. Tuner, Bryan M. Zuetel and Derek J. Scott as Amici Curiae on behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Andrew M. Morgan
Borton Petrini
5060 California Avenue, Suite 700
Bakersfield, CA  93309
(661) 322-3051

Mayo L. Makarcyzk
Milstein Adelman Jackson Fairchild & Wade
10250 Constellation Boulevard, Suite 1400
Los Angeles, CA  90067
(310) 396-9600

Wendy S. Albers
Benedon & Serlin
22708 Mariano Street
Woodland Hills, CA  91367
(818) 340-1950