Filed 8/17/22

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LYNN GERLACH et al., | |
|     Plaintiffs and Appellants, | E075228 |
| v. | (Super.Ct.No. RIC1612811) |
| K. HOVNANIAN'S FOUR SEASONS AT BEAUMONT, LLC, | OPINION |
|     Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Sunshine S. Sykes, Judge.

Affirmed.

Milstein Jackson Fairchild & Wade, Keith G. Wileman, and Mayo L. Makarczyk,

for Plaintiffs and Appellants.

Collinsworth, Specht, Calkins & Giampaoli, Scott D. Calkins, and Anthony P.

Gaeta, for Defendant and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part C of the Discussion.

Plaintiffs Lynn Gerlach and Lola Seals appeal from the judgment entered in their action against defendant K. Hovnanian's Four Seasons at Beaumont, LLC under the Right to Repair Act (the Act), Civil Code section 895 et seq., concerning alleged construction defects.[1] (Undesignated statutory references are to the Civil Code.) We affirm. We publish this opinion in order to clarify that (1) a roof is a manufactured product within the meaning of section 896, subdivision (g)(3)(A) (section 896(g)(3)(A)), only if the roof is completely manufactured offsite, and (2) to prove a roof defect claim under subdivision (a)(4) or (g)(11) of section 896, a plaintiff must prove that water intrusion has actually occurred or roofing material has actually fallen from the roof.

## BACKGROUND

A. *The Dispute*

Defendant developed Four Seasons at Beaumont (Four Seasons), a community for adults 55 and over. Gerlach and Seals own homes in Four Seasons. Gerlach's escrow closed on March 16, 2006. In August 2015, Seals purchased her home from the original owners, who closed escrow on the home in May 2007.

In October 2015 and January 2016, Gerlach and Seals served defendant with notices of claims under the Act. As to the roofs, both notices cited section 896, subdivisions (a)(4), (g)(3)(A), and (g)(11), and under the heading "Roof—Useful Life Reduction" described the following issues: "Roof eaves along the front, back, left, and

---

[1] The Legislature did not give an official name to the legislation (Senate Bill No. 800 (2001-2002 Reg. Sess.)), but the legislation is commonly referred to as the Right to Repair Act. (See *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 247 (*McMillin*).)

right side of the home suffer from staining and/or deterioration due to a compromise to the roof's weatherproofing system.  Roofing system exhibits evidence of excessive ponding of water, improper tile fastening, improper valley sheet metal installation, overexposed field tiles, loose field tiles over pan metal, broken field tiles, missing pipe collars and no drip edge eave metal."

According to the parties' stipulated facts, defendant "timely acknowledged the claims, inspected the homes, made offers to repair, and made various repairs to the homes."

B.  *The Lawsuit*

In September 2016, plaintiffs filed suit against defendant to recover damages they allegedly suffered because of defendant's alleged failure to comply with the building standards set forth in section 896.  In addition to the claims under the Act, plaintiffs brought claims for breach of contract and breach of warranty.

Among other alleged violations under the Act, plaintiffs alleged that the roofs were defective in numerous ways, including that the "[r]oofs, roofing systems, chimney caps, and ventilation components" "allow water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers, including, without limitations, internal barriers located within the systems themselves."  Plaintiffs further alleged that "[r]oofing materials" had "fallen from the roof[s]."  Plaintiffs also alleged that "manufactured products (product that is completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces,

3

electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances" were "installed so as to interfere with the products' useful life."

Defendant filed an answer to the complaint, generally denying the allegations and raising numerous affirmative defenses, including that "the time period for filing actions as to the alleged violations bars the claimed violations." For the limitations defense, defendant cited section 945.5, subdivision (e). Defendant included the same affirmative defense in its answer to the first amended complaint. (The first amended complaint is not included in the record on appeal, and neither is the register of actions from the superior court, in violation of rule 8.122(b)(1)(F) of the California Rules of Court.)

C. *Pretrial Ruling Concerning Roof Claims*

Before trial, defendant objected to plaintiffs' proposed jury instruction on the roof defect claims. Defendant's counsel argued that the jury should not be instructed on plaintiffs' claim that the roofs were defective under section 896(g)(3)(A), which requires that "manufactured products" "be installed so as not to interfere with the products' useful life, if any." The statute defines a manufactured product as "a product that is completely manufactured offsite." (§ 896, subd. (g)(3)(C).) Defense counsel argued that plaintiffs were improperly using section 896(g)(3)(A) "as a catchall" when other statutory standards were not directly on point. Counsel further explained that section 896(g)(3)(A) did not apply because "[a] roof is not a manufactured product."

The trial court agreed with defendant and concluded that plaintiffs could not proceed to trial on the theory that there were any roofing violations under section

4

896(g)(3)(A). The court explained in part that "a roof in and of itself is not a manufactured product" because it "is made up of components, where you have tiles or you have fabric," which are "put together at the home." The court indicated that in its view section 896(g)(3)(A) would apply only to "some sort of prefab manufactured roof, where it's coming in big chunks and you set it on a home."

Plaintiffs filed a motion asking the court to reconsider the ruling. According to plaintiffs, the trial court did not rule on the motion.

D. *Plaintiffs' Roofing Expert*

At trial, Gerald Vandewater testified as a roofing expert for plaintiffs. Vandewater had reviewed the roof plans and roofing contracts for plaintiffs' houses. Vandewater testified that in general tile roofs are unique because they are essentially a "double roof": "There is what we see, which is the tile, which is the primary material. And then there is a host of things underneath it . . . ."[2] There are many components—"a ton of integral parts"—in a tile roof other than just the tile, such as "underlayment, fasteners, [and] wood banisters." Tile roofs are subjected to more testing than any other roofing material.

Plaintiffs' counsel began asking Vandewater questions about how tile roofs are installed. Several questions into that line of questioning, defendant's counsel objected on the basis of relevance and cited Evidence Code section 352. The court gave plaintiffs' counsel "a little leeway" and allowed the line of questioning to continue. Plaintiffs'

---

[2] It appears undisputed that plaintiffs' roofs were made of tile. But Vandewater did not testify to that fact, and the parties do not point to any other evidence presented at trial or otherwise establishing it.

counsel inquired about whether plaintiffs' roofing contracts contained specific requirements related to installing the roofs, and defense counsel objected on the basis of relevance again. The court held an unreported sidebar, excused the jury, and then entertained argument outside the jury's presence.

After the jury left, the court indicated that during the sidebar discussion the court stated that it would allow any testimony regarding the standards found in section 896, subdivisions (a)(4) and (g)(11), relating to water intrusion and material falling from the roof, and violations of those standards. The court asked plaintiffs' counsel if the question to Vandewater concerning plaintiffs' roofing contracts related to a violation of either of these provisions. Counsel stated that Vandewater would explain that the specific installation process was completed in a manner that would allow water to pass beyond the moisture barrier or into the structure. Counsel proffered that Vandewater also would testify that there was "a substantial risk of materials falling from the roof when they either slipped or cracked."

Plaintiffs' counsel argued that a claim under section 896 did not require proof that damage had already occurred, such as materials having fallen from the roof or water having entered the structure. Plaintiffs' counsel noted that there had not been any leaks other than "a couple minor leaks on the asphalt felt that [Vandewater] felt were inconsequential at this point." Defendant's counsel countered that for there to be a violation of the provisions water must have already leaked through the roof or materials must have already fallen from the roof. Because there was no evidence that either of

6

those things had happened, there was no evidence of a violation of section 896, subdivisions (a)(4) and (g)(11).

The court expressed concern that without evidence of actual leakage or material falling from the roofs, Vandewater's testimony would venture into the prohibited topic of the roofs' useful lives under section 896(g)(3)(A). The court concluded that it would not allow plaintiffs to present "testimony on the roofs other than specific violations of the standards; that being, water has entered the structure or passed beyond through the design or actual moisture barriers, or that roofing materials has fallen off the roof." The court ruled that any other testimony from the expert would not be relevant.

The court asked plaintiffs' counsel if Vandewater had any other testimony to offer, and counsel reiterated his belief that Vandewater should be able to give his opinion about whether the statute had been violated but that Vandewater otherwise did not have anything else to offer. Defendant's counsel moved to exclude Vandewater from testifying further. The court agreed and terminated Vandewater's testimony.

After a short recess, the court called the jury back and instructed the jury that "any claims regarding the roof in this case as it relates to [plaintiffs], those are no longer at issue. So that's why Mr. Vandewater is not going to continue with his testimony. I will advise you [that] you are not to speculate or guess or think about why those claims are no longer at issue."

7

E. *The Verdict*

The jury awarded Seals a total of $1,931.08 for defects related to the installation of windows in her home. With respect to Gerlach, the jury found that her claims under the Act were barred because she did not file her complaint within 100 days of completion of the repairs to her home. The jury further concluded that defendant did not breach the purchase and sales contract and that the breach of warranty claim was not timely filed. The court entered judgment based on the jury's verdict.

DISCUSSION

A. *The Act*

The Legislature enacted the Act in 2002 as a comprehensive reform of construction defect litigation for individual residential units. (*McMillin*, *supra*, 4 Cal.5th at pp. 246, 250.) "The Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*Id.* at p. 247.) The Act is the exclusive remedy for claims arising from residential construction defects except for those claims involving personal injury, breach of contract, or fraud. (*Id.* at pp. 247, 259.)

The Act added a new title to the Civil Code, containing five chapters. (*McMillin*, *supra*, 4 Cal.5th at p. 250.) "Chapter 1 establishes definitions applicable to the entire title. (§ 895.) Chapter 2 defines standards for building construction. (§§ 896–897.)

Chapter 3 governs various builder obligations, including the warranties a builder must provide.  (§§ 900–907.)  Chapter 4 creates a prelitigation dispute resolution process.  (§§ 910–938.)  Chapter 5 describes the procedures for lawsuits under the Act.  (§§ 941–945.5.)"  (*Ibid.*)

B.  *Roof Defect Claims*

Plaintiffs argue that the trial "court erred prejudicially in striking plaintiffs' roof defect claims."  (Boldface and initial capitalization omitted.)  We are not persuaded.

Section 896 contains three provisions relating to roofs.  First, subdivision (a)(4) of section 896 provides:  "Roofs, roofing systems, chimney caps, and ventilation components shall not allow water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers, including, without limitation, internal barriers located within the systems themselves."  Second, subdivision (g)(11) of section 896 provides that "[r]oofing materials shall be installed so as to avoid materials falling from the roof."  Third, section 896(g)(3)(A) provides:  "To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any."  The statute defines "'manufactured product'" as meaning "a product that is completely manufactured offsite."  (§ 896, subd. (g)(3)(C).)

Plaintiffs alleged violations under all three of those provisions. With respect to all three claims, plaintiffs argue that the trial court erred by incorrectly interpreting the plain language of the statute. We independently review questions of statutory interpretation. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

Plaintiffs argue that the trial court prejudicially erred by not allowing them to pursue their claim under section 896(g)(3)(A) because under the "clear, unambiguous" language of section 896 (g)(3)(A) "a roof *is* a manufactured product." We do not agree. """As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.""" (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.) When interpreting a statute to determine the Legislature's intent, we look first to the language of the statute. (*Ibid.*) "'If the statute's text evinces an unmistakable plain meaning, we need go no further.'" (*Ibid.*)

While it is true that section 896(g)(3)(A) includes "roofs" on the list of "manufactured products" that may be covered by the provision, the statute also provides an independent definition of the term "manufactured products." (§ 896, subd. (g)(3)(C).) As used in section 896(g)(3)(A), the term "'manufactured product' means a product that is completely manufactured offsite." (§ 896, subd. (g)(3)(C).) Thus, the "roofs" covered by section 896(g)(3)(A) are only those roofs that satisfy the definition of manufactured product set forth in section 896, subdivision (g)(3)(C).

10

As the trial court correctly found, section 896(g)(3)(A) therefore covers only those roofs that are "completely manufactured offsite." (§ 896, subd. (g)(3)(C).) Plaintiffs do not claim that their roofs were "completely manufactured offsite." (*Ibid.*) The trial court consequently did not err by not allowing plaintiffs to pursue their claim under section 896(g)(3)(A), because the roofs do not satisfy the statutory requirements.

Plaintiffs argue in the alternative that section 896(g)(3)(A) applies because "there can hardly be any question that concrete roof *tiles* are manufactured products." Plaintiffs do not, however, develop the argument with any legal analysis or citation to legal authority or to the record, and they do not make any attempt to support the contention by discussing the application of relevant legal authority to the facts of this case. We consequently consider the argument forfeited. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt'"]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 ["An appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference"]; see also Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).)

As to the roof defect claims under section 896, subdivisions (a)(4) and (g)(11), plaintiffs argue that the trial court erred by determining that to be actionable, plaintiffs had to demonstrate that water had already leaked beyond the moisture barrier and that materials had already fallen from the roofs. Plaintiffs argue that "[b]oth provisions are

11

worded preventatively," so that the "roof must be in a condition so that something will not or does occur. In [*sic*] need not *have* occurred." We disagree.

Nothing in the language of subdivisions (a)(4) and (g)(11) of section 896 indicates that a homeowner would be able to bring a claim for violations of those provisions without any evidence of water intrusion or falling material. On the contrary, subdivision (a)(4) of section 896 states that "[r]oofs . . . shall not allow water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers." Plaintiffs fail to explain how they could demonstrate that this provision had been violated absent any evidence of water leakage or intrusion. Until water has leaked or intruded beyond the barrier, the roof satisfies the standard. Likewise, plaintiffs fail to explain how without having material fall from a roof they could demonstrate a violation of subdivision (g)(11) of section 896, which provides that roofing materials "shall be installed so as to avoid materials falling from the roof." Again, until such material has fallen, the roof has been installed in a manner that satisfies this requirement—that is, the roof has been installed in manner that has avoided having material fall from it.

Thus, for a violation of the standards set forth in subdivisions (a)(4) and (g)(11) of section 896 to occur and be actionable, materials must fall from the roof or there must be some sort of prohibited water leak or intrusion. Otherwise, a plaintiff could recover on the basis of the mere possibility that such violations might occur because of some way in which the roof was allegedly negligently installed. Such a claim would subvert the purpose of the Act to reform construction defect litigation and to eliminate common law

12

negligence claims for construction defects.  (*McMillin*, *supra*, 4 Cal.5th at pp. 246, 250.)

Plaintiffs fail to explain how the statutory language supports a contrary conclusion.

The facts of this case vividly illustrate the problem.  Plaintiffs' roofs were more than 12 years old by the time of trial.  There is no evidence that they have leaked or that material has fallen from them.  But plaintiffs sought to introduce evidence that because the roofs were improperly constructed or installed, they were likely to leak or to produce falling material in the future.  We agree with the trial court that this is precisely the kind of claim that the Act was intended to foreclose.

For all of these reasons, we reject plaintiffs' challenges to the trial court's rulings not allowing plaintiffs to proceed on their roof defect claims under section 896, subdivisions (a)(4), (g)(3)(A), and (g)(11).

## C.  *Statute of Limitations Defense*

Gerlach argues that the trial court "erred prejudicially in its various rulings regarding the statute of limitations defense" that defendant asserted against Gerlach's claims under the Act.  (Boldface and initial capitalization omitted.)  We are not persuaded.

### 1.  *The Act's Statutes of Limitations*

Section 945.5 lists all of the affirmative defenses that can be raised in response to a claimed violation under the Act, including "that the time period for filing actions bars the claimed violation."  (§ 945.5, subd. (e).)  Section 941 provides that unless otherwise specified in the Act, "no action may be brought to recover under this title more than 10

years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion." (§ 941, subd. (a).) Section 927 provides that if the statute of limitations has run during the prelitigation process set forth in Chapter 4 of the Act, "the time period for filing a complaint or other legal remedies for violation of any provision of this title, or for a claim of inadequate repair, is extended from the time of the original claim by the claimant to 100 days after the repair is completed, whether or not the particular violation is the one being repaired."

2. *Relevant Facts*

Gerlach closed escrow on her home on March 16, 2006. She served defendant with a notice of claim on October 15, 2015. On March 16, 2016, defendant offered to make certain repairs. According to defendant's response to an interrogatory, Home Maintenance Inspection Inc. (HMI) performed repairs at Gerlach's home on April 29, 2016, and May 23, 2016. Gerlach filed this lawsuit on September 30, 2016—130 days after the last repair was made.

In its answers to the original complaint and the first amended complaint, defendant listed as one of its affirmative defenses that "the time period for filing actions as to the alleged violations bars the claimed violations [citation]," citing section 945.5, subdivision (e). Defendant did not cite section 927 or section 941 in its answers.

In March 2019, defendant submitted a list of affirmative defenses it planned to raise at trial. Defendant stated that as to Gerlach it intended "to present evidence various alleged construction standards violations are not actionable based on applicable statutes

14

of limitations." In September 2019, defendant filed another list of affirmative defenses it planned to raise at trial and it again stated that it planned to present evidence that Gerlach's claims under the Act were not actionable because of the applicable statute of limitations.

In September 2019, defendant filed proposed jury instructions. The proposed jury instructions included instructions mirroring language from sections 927 and 941, subdivision (a).

In April 2019, defendant moved in limine to prohibit Gerlach from presenting evidence related to claims barred by the statute of limitations. Defendant argued that under section 927 the statute of limitations on Gerlach's claims had run because the 10-year statute of limitations had run during the prelitigation process and Gerlach filed her complaint over 100 days after defendant completed repairs.

The reporter's transcript of a pretrial hearing in January 2020 indicates that plaintiffs had previously filed an objection to the statute of limitations defense under section 927. (The record on appeal apparently does not contain the written objection. Neither party cites it, and we were unable to locate it ourselves.) At the hearing, defendant's counsel noted that he had not filed a response because plaintiffs' objection was not a properly noticed motion. Defense counsel argued that defendant had properly pled the statute of limitations under section 927, which it had included in its proposed jury instructions months earlier.

15

Defendant's counsel offered to amend its answer to specifically plead section 927 as the limitations defense it was raising under section 945.5, subdivision (e). Counsel also pointed to a motion in limine he had filed in April 2020 concerning section 927 as evidence that plaintiffs could not possibly be surprised by the limitations defense.

The trial court indicated that it did not believe that the limitations defense under section 927 was "a surprise." Plaintiffs' counsel argued that defendant had not properly pled the limitations defense under Code of Civil Procedure section 458, because defendant did not identify the specific statute in its answer. Counsel argued that Gerlach had been "irreparably prejudiced" by defendant's failure to properly plead the defense. Defense counsel countered that defendant had properly pleaded the defense by citing section 945.5, subdivision (e), and stating that it was pleading limitations as a defense.

The court took the matter under submission and later announced its ruling as to plaintiffs' "formal objection" to defendant's "being able to assert an affirmative defense under [section] 927." The court stated that it was "going to overrule that objection and allow the defendant to present the affirmative defense." The court explained that it believed that section 945.5, subdivision (e), "encompasses [section] 927."

Plaintiffs moved to exclude the testimony of percipient witness Adrian Lopez, the vice president of HMI and HMI's person most knowledgeable about the repairs performed by HMI. Plaintiffs argued that Lopez's identity and the content of his proposed testimony had not been "disclosed in response to at least 3 sets of interrogatories expressly calling for that information." In opposing the motion, defendant

16

argued that plaintiffs failed to pursue discovery about HMI, even though (1) defendant advised plaintiffs in April 2016 that HMI was the company that would be performing the repair work, and (2) defendant's responses to interrogatories identified HMI as the contractor that performed the repairs. Defendant also argued that the motion was untimely.

Defendant had submitted a declaration from Lopez in support of a motion in limine. In it, Lopez attested to the date that repair work at Gerlach's residence was completed.

The trial court denied plaintiffs' motion as untimely and also because defendant's discovery responses identified HMI. At trial, Lopez testified that repair work on Gerlach's home was completed on April 29, 2016, and May 23, 2016.

3. *Analysis*

Gerlach argues that the trial court prejudicially erred by allowing defendant to assert a statute of limitations defense, and she challenges other rulings related to the limitations defense. The arguments lack merit.

Gerlach first argues that defendant failed to mention sections 927 and 941 in its answer and that Gerlach "objected to a jury instruction that was based upon section 927, and raised [Code of Civil Procedure] section 458 before the trial court, demanding, diligently, that it be enforced. The court abused its discretion in failing to do so." Under Code of Civil Procedure section 458, a pleading that raises a statute of limitations defense must cite the applicable code provision; case law holds that the requirement is strictly

17

enforced, but a plaintiff must be diligent in timely raising the issue.  (*Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1086, fn. 5.)  Gerlach's argument fails for several reasons.

First, Gerlach fails to identify *which specific ruling* by the trial court amounted to an abuse of discretion.  Gerlach does not cite the record at all in this section of her opening brief.  We consequently consider the argument forfeited.  (*Alki Partners, LP v. DB Fund Services, LLC*, *supra*, 4 Cal.App.5th at p. 589.)

Second, to the extent that Gerlach is challenging the trial court's decision to overrule her written objection concerning defendant's limitations defense, the argument fails because Gerlach did not include the written objection in the clerk's transcript.  The appellant bears the burden of providing an adequate record on appeal.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)  We cannot assess the trial court's ruling without reviewing the written objection or motion on which the trial court ruled.  (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 ["Without respondent's motion to strike, plaintiff's opposition, and the court's order, we cannot review the basis of the court's decision"].)

Third, Gerlach fails to show prejudice.  (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-854.)  "Prejudice means '"a reasonable probability that in the absence of the error, a result more favorable to [the appellant] would have been reached."'"  (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016) 6 Cal.App.5th 1258, 1287.)  When Gerlach raised the issue of compliance with Code of

18

Civil Procedure section 458 in the trial court, defendant offered to amend its answer to cite section 927. The court ultimately ruled that defendant could pursue its statute of limitations defense without amending its answer. Assuming for the sake of argument that the ruling was error, it is not reasonably probable that Gerlach would have obtained a more favorable result in the absence of the error, because the court could and almost certainly would have allowed defendant to amend its answer to cure the defect. (Code Civ. Proc., § 576; *Vedder v. Superior Court of Lassen County* (1967) 254 Cal.App.2d 627, 629.) Indeed, on this record it would probably be an abuse of discretion not to allow such an amendment. Defendant makes this point in its respondent's brief, and Gerlach does not respond to it in her reply brief.

Gerlach's remaining arguments concerning the statute of limitations defense also fail. Gerlach argues that (1) defendant "failed abjectly to respond to discovery requests that called for it to disclose its statute of limitations defense" in part by failing to disclose "the individual persons who had knowledge of facts in support of the defense," (2) the trial court erred by denying as untimely Gerlach's motion to exclude Lopez's testimony, and (3) "the court's determination that [p]laintiffs' counsel could not present interrogatory responses to the jury, because they contained boilerplate objections, is simply indefensible." Gerlach does not support any of those arguments with legal analysis, citation to legal authority, or citation to the record. We consequently consider the points forfeited. (*Hernandez v. First Student, Inc.*, *supra*, 37 Cal.App.5th at p. 277; *Alki Partners, LP v. DB Fund Services, LLC*, *supra*, 4 Cal.App.5th at p. 589.)

19

For all of these reasons, we affirm the challenged rulings concerning defendant's statute of limitations defense.

## DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs of appeal.

CERTIFIED FOR PARTIAL PUBLICATION

MENETREZ _____

J.

We concur:

McKINSTER _____

Acting P. J.

RAPHAEL _____

J.