Filed 11/14/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| KOHLER CO., | No. B288935 |
| Petitioner, | (Super. Ct. No. BC588369) |
| v. | (John Shepard Wiley, Jr., Judge) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| JOANNA PARK-KIM et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDING; petition for writ of mandate. Petition granted; writ issued.

Arnold & Porter Kaye Scholer, Eric Shapland, Ryan W. Light and John C. Ulin for Petitioner.

Newmeyer & Dillion, Alan H. Packer, Jeffrey R. Brower and Joseph A. Ferrentino for California Building Industry Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Kasdan LippSmith Weber Turner, Kenneth S. Kasdan, Jaclyn L. Anderson and Graham B. LippSmith for Real Parties in Interest.

In 2000, the California Supreme Court ruled in *Aas v. Superior Court* (2000) 24 Cal.4th 627 (*Aas*) that a homeowner could not recover on a negligence claim for construction defects unless the homeowner could show actual property damage or personal injury (as opposed to purely economic loss, such as diminution in value of the home or the cost to repair the defects). After *Aas* was decided, representatives from the building industries, insurance companies, and homeowners came together with members of the Legislature to devise a comprehensive statutory scheme to govern construction defect litigation. That statutory scheme, commonly known as the Right to Repair Act (the Act) was enacted in 2002. (Stats. 2002, ch. 722, principally codified at Civ. Code,[1] §§ 895-945.5.) As recently explained by the Supreme Court, "[t]he Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 247 (*McMillin*).)

In the present case, we are asked to determine whether homeowners may bring a class action asserting a claim under the Act against the manufacturer of an allegedly defective plumbing fixture used in the construction of class members' homes. Based on our examination of the structure and language of the Act, as well as the

---

[1] Further undesignated statutory references are to the Civil Code.

2

legislative history, we conclude that class actions are not allowed under the Act except in one limited context: to assert claims that address solely the incorporation into a residence of a defective component, unless that component is a product that is completely manufactured offsite.

Because the claim in this case involves allegedly defective products that were completely manufactured offsite, we hold that the claim alleged under the Act cannot be litigated as a class action. Accordingly, we grant the writ petition filed by defendant Kohler Co. (Kohler), and issue a writ of mandate directing the trial court to vacate its order to the extent it denied in part Kohler's anti-class certification motion and to enter a new order granting the motion in its entirety.

## BACKGROUND

Plaintiffs Joanna Park-Kim and Maria Cecilia Ramos are each owners of a residential condominium dwelling in which "Rite-Temp Pressure Balancing Valves" and "Mixer Caps" (which are contained in "Rite-Temp Valve assemblies") manufactured by Kohler were installed during construction. In the third amended complaint, plaintiffs allege that these valves and mixer caps, which are designed to regulate water flow and temperature in household plumbing, do not operate as intended due to their defective design and manufacturing, and "are corroding, failing, and/or will inevitably fail," which has caused or will cause damage to other components of the household plumbing lines or fixtures.

3

Plaintiffs brought the instant lawsuit on behalf of themselves and all owners of residential dwellings in California in which these valves and mixer caps were installed during original construction, alleging a claim for violations of the Act, as well as claims for strict liability, warranty claims, and other claims.[2] It is estimated that Kohler sold approximately 630,000 of the identified valves and mixer caps in California during the relative time period.

After plaintiffs received numerous extensions of time, totaling 18 months, to file their motion for class certification, Kohler sought to resolve the case by filing a motion for summary judgment or adjudication on threshold legal issues. The trial court granted summary adjudication as to all claims except plaintiff Ramos' warranty and negligence claims, both plaintiffs' claims under the Act, and their UCL claim. Kohler then filed a "motion re anti-class-certification," seeking a ruling that none of the remaining causes of action can be certified as a class action.

On January 22, 2018, the trial court granted Kohler's motion as to the warranty, negligence, and UCL claims, but denied it as to the claim under the Act. The court also certified its ruling for appellate review,

---

[2] Plaintiffs' non-Act claims, which are not at issue in this proceeding, are for (1) strict liability/failure to warn; (2) strict liability/manufacturing defect; (3) strict liability/design defect; (4) negligence; (5) breach of express warranty; (6) breach of implied warranty of fitness; (7) breach of implied warranty of merchantability; and (8) violations of Business and Professions Code section 17200 (the UCL claim). With regard to the claim asserted under the Act, the class is limited to owners who purchased their dwellings on or after December 14, 2005.

4

on the grounds that it presented a controlling question of law upon which there were substantial grounds for differences of opinion, and that appellate resolution of the question would greatly advance the conclusion of the litigation. The court then stayed all proceedings pending resolution of the instant petition.

Kohler filed the instant petition for writ of mandate, asking this court to order the trial court to vacate its January 22, 2018 order to the extent it denies Kohler's anti-class-certification motion with respect to the claim under the Act and to issue a new order granting the motion in its entirety. We summarily denied the petition, and Kohler filed a petition for review in the Supreme Court. The Supreme Court granted review and transferred the matter back to this court with directions to vacate our order denying mandate and to issue an order directing the superior court to show cause why the relief sought should not be granted.

We issued the order to show cause as directed by the Supreme Court, and have received a return to the petition from plaintiffs and a traverse from Kohler.[3] In the return, plaintiffs demurred to the petition on the ground that the petition fails to state a justiciable basis for granting a writ of mandate and/or prohibition. But, as Kohler observes in its traverse, the Supreme Court has concluded otherwise and directed us to issue an order to show cause and consider the issue

---

[3] We also received an application from California Building Industry Association to file an amicus curiae brief. We have granted that request and have considered the amicus brief, as well as plaintiffs' response to that brief.

5

Kohler presents. The Supreme Court's order constitutes a determination that writ review is proper. (*Borg-Warner Protective Services Corp. v. Superior Court* (1999) 75 Cal.App.4th 1203, 1206-1207.) Therefore, we overrule plaintiffs' demurrer and address Kohler's petition.

## DISCUSSION

In *McMillin*, the California Supreme Court was asked to determine whether the Act "was designed only to abrogate *Aas* [and] supplant[] common law remedies with a statutory claim for purely economic loss," or whether it was intended "to go further and supplant the common law with new rules governing the method of recovery in actions alleging property damage." (*McMillin, supra,* 4 Cal.5th at p. 247.) In reaching its conclusion that the Legislature intended the broader displacement, and "made the Act the virtually exclusive remedy not just for economic loss but also for property damage arising from construction defects" (*ibid.*), the Court analyzed the text, purpose, and legislative history of the Act. We conduct a similar analysis to resolve the issue before us: whether the Act permits homeowners to bring a class action against the manufacturer of a plumbing fixture that was installed in the construction of their homes, alleging that the product was defective and resulted in violations of the standards set forth in the Act.

6

A.	*Overview of the Act*

Because of the complexity of the Act and the interplay between many of the statutory provisions, we begin with an overview of the statutory scheme. As the Supreme Court observed, "the Act . . . 'comprehensively revises the law applicable to construction defect litigation for individual residential units' within its coverage."[4] (*McMillin, supra*, 4 Cal.5th at p. 250.) The Court explained that "[t]he Act added title 7 to division 2, part 2 of the Civil Code. (§§ 895-945.5.) That title consists of five chapters. Chapter 1 establishes definitions applicable to the entire title. (§ 895.) Chapter 2 defines standards for building construction. (§§ 896-897.) Chapter 3 governs various builder obligations, including the warranties a builder must [or may] provide. (§§ 900-907.) Chapter 4 creates a prelitigation dispute resolution process. (§§ 910-938.) Chapter 5 describes the procedures for lawsuits under the Act. (§§ 941-945.5.)" (*McMillin, supra*, 4 Cal.5th at p. 250.) For purposes of the case before us, our focus is on chapters 2, 4, and 5, particularly as they relate to claims made against the manufacturer of a product used in the construction of a residential unit, rather than against the builder of that unit.

---

[4]	The Act applies "only to new residential units where the purchase agreement with the buyer was signed by the seller on or after January 1, 2003." (§ 938.)

1. *Chapter 2*

Chapter 2 contains two sections, sections 896 and 897. Section 896 provides a detailed and comprehensive set of standards for residential construction, addressing water, structural, soil, fire protection, plumbing and sewer, and electrical systems issues, and issues regarding other areas of construction; it also provides various time periods within which an action must be brought, depending upon the standard alleged to have been violated.

Section 896 begins with a preamble that states in relevant part: "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, . . . a builder, and to the extent set forth in Chapter 4 (commencing with Section 910), a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, shall, except as specifically set forth in this title, be liable for, and the claimant's[5] claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title. This title applies to original construction intended to be sold as an individual dwelling unit." (§ 896.) In other words, a homeowner alleging a construction defect in a residence may bring a claim only under the Act, with certain specified exceptions. (See *McMillin*, *supra*, 4 Cal.5th at p. 247.)

---

[5]	A "claimant" is defined as "the individual owners of single-family homes, individual unit owners of attached dwellings and, in the case of a common interest development, any association as defined in Section 4080 [e.g., a homeowner's association]." (§ 895, subd. (f).)

One of those exceptions is found in section 896 itself, and is relevant to this case. Subdivision (g)(3)(E) of section 896 (hereafter, section 896(g)(3)(E)) provides that "[t]his title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure." (§ 896(g)(3)(E).) A "manufactured product" is defined as "a product that is completely manufactured offsite." (§ 896, subd. (g)(3)(C).) Thus, a homeowner alleging that a manufactured product—such as a plumbing fixture— installed in her home is defective may bring a claim under the Act only if the allegedly defective product caused a violation of one of the standards set forth in section 896; otherwise she must bring a common law claim outside of the Act against the manufacturer, and would be limited to the damages allowed under the common law.

Section 897 is a kind of catch-all provision that "provides a supplemental standard for any building components that section 896 may have overlooked." (*McMillin*, *supra*, 4 Cal.5th at p. 253.) It provides: "The standards set forth in this chapter [i.e., in section 896] are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." (§ 897.) The key difference between section 897 and 896 (other than the specification of standards) is that a claim brought under section 896 need only allege a violation of one or more of the specified standards (see § 942, discussed in Section A.3., *post*), while a claim under section

9

897 must allege both a defective function or component of the home and damage caused by that defect.[6]

2. *Chapter 4*

a. *Prelitigation Procedures*

Chapter 4 sets out a detailed set of procedures that must be followed before a claimant may file litigation asserting claims under the Act.  It begins with section 910, which provides, in relevant part:  "Prior to filing an action against *any party* alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896), the claimant shall initiate the following prelitigation procedures:  [¶]  (a)  The claimant or his or her legal representative shall provide written notice via certified mail, overnight mail, or personal delivery *to the builder*, in the manner prescribed in this section, of the claimant's claim that the construction of his or her residence violates any of the standards set forth in Chapter 2 (commencing with Section 896)."  (Italics added.)

The builder must acknowledge receipt of the notice (§ 913), and may elect to inspect the claimed violation of the standards and conduct testing[7] (§ 916, subd. (a)).  If the builder intends to hold a subcontractor,

---

[6]     We note that, as the Supreme Court observed in *McMillin*, some of the standards set forth in section 896 "use the causation of damage as part of the test for whether a given part is defective."  (*McMillin, supra*, 4 Cal.5th at p. 253.)

[7]     The builder may conduct a second inspection or testing if the builder deems it necessary and certain conditions are met.  (§ 916, subd. (c).)

design professional, individual product manufacturer, or material supplier responsible for its contribution to the violation of the standards, the builder must provide notice to that person or entity sufficiently in advance to allow them to attend the inspection and testing and to participate in the repair process. (§ 916, subd. (e).) After the inspection or testing, the builder may offer in writing to repair the violation.[8] The offer must include, among other things, a detailed statement explaining the nature and scope of the repair, with a reasonable completion date for the repair, and it must compensate the homeowner for all applicable damages recoverable under the Act. (§ 917.) The offer to repair must also be accompanied by an offer to mediate the dispute if the homeowner so chooses. (§ 919.) If the homeowner rejects the offer to mediate, he or she must either authorize the builder to proceed with the repair, or request that the repair be completed by an alternative contractor chosen by the homeowner in accordance with specified procedures. (§ 918.) If mediation takes place but fails to resolve the dispute, the homeowner *must* allow the repair to be performed either by the builder or by the alternative contractor as selected under the procedures set forth in section 918. (§ 919.)

The various sections of Chapter 4 set time limits for all of the acknowledgements, notices, offers, and repairs set forth in the chapter. If the builder fails to strictly and timely comply with the requirements,

---

[8] The builder may in the alternative make an offer of cash and no repair in exchange for a release. In such a case, the homeowner may either accept the offer or reject it and proceed with filing an action under the Act. (§ 929.)

the claimant is released from the requirements of the chapter and may proceed with the filing of an action.  (§§ 915; 916, subd. (c); 920; 925.)

If the procedures set forth in Chapter 4 do not resolve the dispute between the parties, the claimant may file an action to enforce the other chapters of the Act.  (§ 914, subd. (a).)  If the builder has elected to repair the alleged violation of the standards, the claimant may, at the completion of the repair, file an action for violation of the applicable standards or for a claim of inadequate repair, or both, seeking all applicable damages available under the Act.  (§ 926.)  However, before bringing a post-repair action, the claimant must request mediation if there was no previous mediation between the parties.  (§ 928.)  If the claimant does not satisfy the requirements of Chapter 4, the builder may bring a motion to stay any court action or other proceeding until the requirements are satisfied.  (§ 930, subd. (b).)

### b. *Other Provisions of Chapter 4*

In addition to the sections detailing the prelitigation procedures that must be followed, Chapter 4 also includes provisions addressing various issues, including (as relevant to this action) claims that combine causes of action not covered by the Act with those that are covered (§ 931) and parties subject to application of the Act (§ 936).

Section 931, which we discuss in more detail in part B.1. of this opinion, *post*, provides that when a claim of construction defects combines causes of action or damages that are not covered by the Act with claims of "unmet standards" (i.e., violations of one or more of the section 896 standards and/or section 897) under the Act, the claims of

12

unmet standards must be administered in accordance with the Act. Section 936 provides, as relevant to this case, that all of the provisions of the other chapters of the Act apply to general contractors, subcontractors, material suppliers, individual product manufacturers, and design professionals to the extent that those people or entities caused, in whole or in part, a violation of one of the standards as the result of a negligent act or omission or a breach of contract.

3.    *Chapter 5*

Chapter 5 sets forth the procedures for litigation under the Act. The chapter includes sections on the statute of limitation for such actions (§ 941), elements of a claim for violation of the Chapter 2 standards (§ 942 [to establish a claim, the homeowner need only demonstrate that the home does not meet the applicable standard; "[n]o further showing of causation or damages is required to meet the burden of proof"]), and available affirmative defenses (§ 945.5).

The chapter also includes a section setting forth the exclusivity of, and exceptions to, the Act: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute." (§ 943, subd. (a).)

Finally, Chapter 5 includes a section setting forth the damages recoverable under the Act: "If a claim for damages is made under this title, the homeowner is only entitled to damages for the reasonable

13

value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute."  (§ 944.)

B.    *Class Actions Under the Act*

With this statutory scheme in mind, we turn to the question presented in this case:  May a claim for violation of certain standards under the Act caused by an alleged defect in plumbing fixtures be brought against the manufacturer of the fixtures in a class action?  To answer this question, we start with an examination of section 931, the only provision of the Act that mentions class actions.

1.    *Section 931*

Section 931 provides in full:  "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims, the claimed unmet standards shall be administered according to this part, although evidence of the property in its unrepaired condition may be introduced to support the respective

14

elements of any such cause of action.  As to any fraud-based claim, if the fact that the property has been repaired under this chapter is deemed admissible, the trier of fact shall be informed that the repair was not voluntarily accepted by the homeowner.  As to any class action claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter."

There is no question that the language of this section is somewhat obtuse.  Although its precise meaning has not been at issue in cases decided by the courts of this State up to this point, the Supreme Court and other courts generally have viewed the first sentence of section 931 to provide a (nonexclusive) list of exclusions from the Act.  (See, e.g., *McMillin*, *supra*, 4 Cal.5th at pp. 252, 254; *Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 890, 893.)  That list of exclusions is provided in the context of explaining the application of the Act in a lawsuit that includes both claims under the Act alleging violations of the section 896 and/or section 897 standards and claims that are "not covered by" —i.e., excluded from—the Act.  Section 931 explains that the prelitigation procedures must be followed with regard to the claims under the Act, but those procedures do not apply to claims that are outside of the Act, examples of which are listed.

One of the listed exclusions is "class actions."  While this appears at first glance to be an unambiguous exclusion of class actions in the first sentence of section 931, ambiguity is introduced when the first sentence is read in conjunction with the last sentence:  "As to any class action claims that address solely the incorporation of a defective

15

component into a residence, the named and unnamed class members need not comply with this chapter [i.e., the prelitigation procedures].” This sentence seems to suggest that at least some class actions are allowed under the Act.  So how do we reconcile these seemingly contradictory sentences in the same statute?

Plaintiffs contend that, despite the inclusion of class actions on the list of exclusions, the first sentence of the statute cannot be interpreted to exclude class actions asserting claims under the Act because a class action is neither a cause of action nor a form of damages; rather, “it is a procedural vehicle for enforcing substantive law.”  (Citing *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462.)  Thus, they argue that the inclusion of class actions in the list merely means that the Act does not cover causes of actions for personal injuries, fraud-based claims, or other statutory causes of action, or class actions asserting those causes of action.  They contend the last sentence reinforces that interpretation because it demonstrates that the Act anticipates the use of class action procedures to bring claims under the Act and facilitates the use of the procedure by waiving the prelitigation requirements.

Kohler contends the sentences are not contradictory.  It argues that the first sentence of the statute excludes all class actions for any claim under the Act, while the last sentence refers to class actions for claims that are outside of the Act.  It reasons that because the language used in the last sentence is so similar to the language used in the

exclusion set forth in section 896(g)(3)(E)[9] —both refer to claims "solely" for a defective component or manufactured product—the last sentence must be understood to be referring to the same claims. And, since section 896(g)(3)(E) excludes those claims from operation of the Act, the last sentence of section 931 must be understood to refer to claims that are outside the Act.

We disagree with both parties' interpretations of section 931.

We disagree with plaintiffs' interpretation because it ignores the actual language used in the statute. (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [when interpreting a statute, the court cannot "insert what has been omitted, or . . . omit what has been inserted," and "must give significance to every part of a statute to achieve the legislative purpose"].) While it is true that class actions are neither causes of action nor a form of damages, we observe that causes of action that are asserted in class actions often are referred to as "class action claims." And given the inconsistent and imprecise use of the terms "causes of action" and "claims" throughout the Act (see *Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1145), it is not surprising that the language used in section 931 is imprecise. We do not believe that the use of this imprecise language demonstrates an intent to treat class actions differently than the other items on the

---

[9] Section 896(g)(3)(E) provides: "This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure." The last sentence of section 931 provides: "As to any class action claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter."

17

list of exclusions in the first sentence of section 931 for purposes of interpreting the statutory language. (See *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 ["Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law"].)

Moreover, plaintiffs' interpretation of the first sentence makes no sense. Had the Legislature intended the interpretation plaintiffs give the sentence, logically it would have placed "class actions" at the end of the items on the list of exclusions, rather than in the middle of the list, with language qualifying that "class actions" means only those actions asserting the previous items listed. And in any event, there would be no reason for the Legislature to specify that the Act does not cover class actions that assert claims that are not covered by the Act. If the claims themselves are not covered by the Act, any procedural devices normally available outside of the Act, such as class actions, necessarily are available with regard to those claims.

Kohler's interpretation of the first sentence of section 931—i.e., that it excludes *all* class actions—also makes little sense because it conflicts with the last sentence of the statute. Although Kohler tries to reconcile the apparent conflict by arguing that the last sentence refers only to claims that are excluded from the Act under section 896(g)(3)(E), its interpretation of that sentence is flawed for two reasons.

First, Kohler's interpretation ignores the critical difference between the language of the two statutes. The section 896(g)(3)(E) exclusion applies to claims "solely for a defect in *a manufactured*

18

*product*" used in the construction of the residence and excludes those claims from the Act entirely (§ 896(g)(3)(E), italics added), while the last sentence of section 931 relieves claimants from *the prelitigation requirements* of Chapter 4 of the Act for class action claims based "solely [on] the incorporation of a defective *component* into a residence" (§ 931, italics added.)  A "component" is not the same thing as a "manufactured product."  The term "component" as used in the Act may include a "manufactured product," but it is not limited to manufactured products. Indeed, there are many kinds of components referenced in section 896. (See, e.g., § 896, subds. (a)(4) ["Roofs, roofing systems, chimney caps, and ventilation components"], (10) ["Stucco, exterior siding, exterior walls, . . . and other exterior wall finishes and fixtures and the systems of those components and fixtures"], (b)(1) ["Foundations, load bearing components, and slabs"], (g)(9) ["Untreated steel fences and adjacent components"].)  Similarly, section 900, which addresses limited warranties that must be provided to cover the fit and finish of certain "building components," sets forth a list of those components, which includes items that might be "manufactured products" as defined in section 896, subdivision (g)(3)(C), as well as items that clearly would not.  (§ 900 [listing "cabinets, mirrors, flooring, interior and exterior walls, countertops, paint finishes, and trim"].)  Thus, contrary to Kohler's assertion, the claims referred to in the last sentence of section 931 are not entirely the same as the claims referred to in section 896(g)(3)(E).

Second, Kohler's interpretation of the last sentence of section 931 would render that sentence superfluous.  Since the Act does not apply *at*

*all* to claims based solely on a defect in a manufactured product, there is no reason for the Legislature to specify that Chapter 4 of the Act does not apply to those excluded claims if they are brought as class actions.

What, then, are we to make of the last sentence of section 931? Plaintiffs contend that this sentence specifies that class actions are allowed and waives the prelitigation procedures for those claims. But once again, plaintiffs' interpretation ignores the statutory language. We agree that the language of the last sentence could, when read in isolation, be interpreted to mean that class actions generally *are* allowed for claims under the Act. But the waiver of the prelitigation procedures provision cannot be interpreted to apply to all class actions because its plain language states that it applies only as to a specific category of class action claims: those "that address solely the incorporation of a defective component into a residence." (§ 931.) It is illogical to conclude that the Legislature intended the last sentence to excise the exclusion of class actions contained in the first sentence of the statute, and also intended to waive the prelitigation procedures for some class action claims (those that address solely the incorporation of a defective component into a residence), but not all class action claims. Instead, the more logical interpretation is that the last sentence, although inartfully written, carves out a limited exception to the exclusion of class actions—for "claims that address solely the incorporation of a defective component into a residence" (§ 931)—and waives the prelitigation procedures for those class action claims. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844

20

["Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided"].)

### 2. *Legislative History and Purpose of the Act*

The legislative history and purpose of the Act as a whole support our conclusion that the class action device may not be used to prosecute claims under the Act, with one very narrow exception.

When enacting the Act, the Legislature declared that "[t]he prompt and fair resolution of construction defect claims is in the interest of consumers, homeowners, and the builders of homes, and is vital to the state's continuing growth and vitality. However, under current procedures and standards, homeowners and builders alike are not afforded the opportunity for quick and fair resolution of claims. Both need clear standards and mechanisms for the prompt resolution of claims. [¶] . . . It is the intent of the Legislature that this act improve the procedures for the administration of civil justice, including standards and procedures for early disposition of construction defects." (Stats. 2002, ch. 722, § 1, p. 4247.)

In its analysis of Senate Bill No. 800, which created the Act, the Senate Judiciary Committee observed that "[t]he bill seeks to respond to concerns expressed by a number of parties. The bill responds to concerns from homeowners and the Consumer Attorneys of California over the consequences of *Aas*[, *supra*,] 24 Cal.4th 627, which held that defects must cause actual damage or personal injury prior to being actionable in tort. The bill also responds to concerns expressed by builders, subcontractors, and insurers over the costs of construction

21

defect litigation [and its] impact on housing costs in the state." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 3-4.)

The Senate Judiciary Committee analysis explained how the bill's establishment of standards and imposition of liability for violations of those standards would simplify the resolution of disputes over many construction defects. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4.) The analysis also explained the impact of the bill on builders and their affiliates: "The bill establishes a mandatory process prior to the filing of a construction defect action. *The major component of this process is the builder's absolute right to attempt a repair prior to a homeowner filing an action in court.* Builders, insurers, and other business groups are hopeful that this right to repair will reduce litigation." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, p. 5, italics added.)

That the Legislature considered the prelitigation process a critical component of the Act is demonstrated by the detail and scope of Chapter 4. As our summary of that chapter shows, the Legislature left no doubt that the goal of this process was to have disputes resolved and repairs performed as quickly as possible, and, if possible, without litigation. It makes sense, then, that the Legislature intended to exclude class actions for virtually any claim under the Act, because

22

class actions make prelitigation resolution impossible.[10]  Even if the named plaintiffs bringing a class action comply with the prelitigation process, thus giving the builder of their homes an opportunity to attempt to repair whatever defect is claimed as to their homes, the builders of other homes are given no such opportunity with respect to the unnamed class members, thus thwarting one of the most significant aspects of the Act.[11]  (See *McMillin, supra,* 4 Cal.5th at pp. 255-256 [rejecting an interpretation of the Act that would thwart the mandatory prelitigation process and the granting of a right to repair].)

C.    *Application to the Present Case*

Having determined that section 931 excludes class actions, with a narrow exception created by the last sentence, we must determine

---

[10]    This is especially true in a case such as this one, which alleges the incorporation of a widely-used plumbing fixture into potentially hundreds of thousands of dwellings, presumably constructed by thousands of different builders, each of whom must be given notice of the alleged defect and an opportunity to repair it.

[11]    Plaintiffs argue that this significant aspect is not thwarted in this case because only the builders are given an opportunity to attempt to repair the claimed defects under the Act.  That is not correct.  It is true that the claimant must give notice to the builder, rather than the manufacturer, prior to filing an action.  But the claimant must do so whenever an action is to be filed "against any party." (§ 910.)  If the manufacturer is to be held responsible in whole or in part for the violation of the standards, the builder must provide notice to the manufacturer, allow the manufacturer to attend the inspection and testing of the alleged violation, and allow the manufacturer to participate in the repair process. (§ 916, subd. (e).)

23

whether the claim alleged in this case may be brought in a class action. We conclude it may not.

First, the narrow exception applies only to "class action claims that address solely the incorporation of a defective component into a residence." (§ 931.) But plaintiffs' claim does not address *solely* the incorporation of a defective component into their homes. Rather, they allege that the use of the allegedly defective valves and mixer caps violated and/or caused violations of several of the standards set forth in section 896, and that they caused damage to other components in their homes.[12]

Second, even if plaintiffs' claim could be deemed to address solely the incorporation of a defective component into their homes, that claim could not be brought under the Act because the allegedly defective component is a manufactured product, and such claims are expressly excluded. (See § 896, subd. (g)(3)(E) ["This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure"].) For this reason, we

---

[12] We note that plaintiffs also allege that the valves and mixer caps violated and/or caused violations of section 897. It would appear that if plaintiffs' claim was limited to that allegation, that might qualify as a claim that addresses solely the incorporation of a defective component into their homes, so long as the defect caused damage. (§ 897 ["To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage"]; see also *McMillin, supra,* 4 Cal.5th at pp. 253-254 [explaining that the Act covers, with certain specified exceptions, claims alleging violations of the standards under section 896, and claims under section 897 for defective components that do not violate an articulated section 896 standard but cause damage].) But their claim is not so limited, and therefore the claim does not come within section 931's exception to the class action exclusion.

24

conclude that despite the class action exception in the last sentence of section 931 relating to actions solely for defective components, that exception must be interpreted to include its own exclusion for claims that seek to recover solely for the incorporation of a defective manufactured product—i.e., "a product that is completely manufactured offsite" (§ 896, subd. (g)(3)(C)).  (See *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 ["the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole"].)

In short, we hold that the Act does not permit class action claims except when those claims address solely the incorporation into the home of a defective component other than a product that is completely manufactured offsite.  Therefore, the trial court erred by denying Kohler's anti-class certification motion with respect to the cause of action under the Act.

//

//

//

//

//

//

//

//

//

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent Superior Court for Los Angeles County to vacate its January 22, 2018 order to the extent it denied Kohler's anti-class certification motion and to issue a new and different order granting the motion in its entirety. Kohler shall recover its costs with regard to this writ proceeding.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:


MANELLA, P. J.


COLLINS, J.

26