Filed 8/27/20  Brasch v. K. Hovnanian Enterprises, Inc. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENDALL BRASCH et al., | |
| Plaintiffs and Appellants, | G057436 |
| v. | (Super. Ct. No. 30-2013-00649417) |
| K. HOVNANIAN ENTERPRISES, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Glenda Sanders, Judge.  Reversed.

Kabatech and Richard L. Kellner; Bridgford, Gleason & Artinian, Richard K. Bridgford and Michael H. Artinian; McNicholas & McNicholas and John Patrick McNicholas for Plaintiffs and Appellants.

Downey Brand, William R. Warne, Meghan M. Baker and Bradley C. Carroll for Defendants and Respondents.

\*          \*          \*

This is an appeal from an order striking class action allegations in the third amended complaint (complaint) in this construction defect case. Plaintiff Kendall Brasch, on behalf of a putative class of homeowners (collectively plaintiffs), alleged the home that was built by and purchased from defendants K. Hovnanian Enterprises, Inc., and K. Hovnanian Enterprises of California was defective due to faulty copper pipes. The remaining defendants include Plumbing Concepts, Inc., and Mueller Industries, Inc. (collectively defendants).

The trial court stated it was required to grant defendants' motion to strike the class allegations based on a recent case from the Second District Court of Appeal, *Kohler Co. v. Superior Court* (2018) 29 Cal.App.5th 55 (*Kohler*), which interpreted the statutory scheme known as the Right to Repair Act (the Act; Civ. Code, § 895 et seq.).[1] We will discuss it in greater detail below, but in essence, *Kohler* held: "Based on our examination of the structure and language of the Act, as well as the legislative history, we conclude that class actions are not allowed under the Act except in one limited context: to assert claims that address solely the incorporation into a residence of a defective component," but excluding components that are "completely manufactured offsite." (*Kohler*, *supra*, 29 Cal.App.5th at p. 59.)

Plaintiffs argue this interpretation of the statute is incorrect, and even if it is correct, it does not apply here. Defendants argue the statute was correctly applied by the trial court. We have concerns about *Kohler*'s key holding, but it does not drive our ruling here. The exception *Kohler* carves out regarding components incorporated into a residence, in our view, should not have been interpreted to exclude cases where defects in

---

[1] Subsequent statutory references are to the Civil Code unless otherwise specified. The Act is sometimes referred to in the record as "SB 800," which was its designation as legislation. (See *Elliott Homes, Inc. v. Superior Court* (2016) 6 Cal.App.5th 333, 336-337.)

products manufactured offsite are alleged, and we reverse the trial court's order on that basis.

I

FACTS

A. *The Complaint*

This is one of a number of pending actions arising from the use of allegedly defective copper pipe in new homes in Ladera Ranch. All of the cases have nearly identical claims and seek the same relief, and nearly all have been stayed pending this appeal.

The operative complaint alleged the defective pipe damaged the putative class members' homes in violation of the Act. The putative class was defined as "All homeowners in the Class Area whose residences contain copper pipe, were constructed by K. Hovnanian and substantially completed within ten (10) years of the filing of the original complaint in this action, and the original purchase agreements were signed by the builder on or after January 1, 2003." The class area was defined as numerous subdivisions in Ladera Ranch.

The complaint alleged, among other things, that one of defendants' contractors had stated in deposition testimony that it has known about pinhole leaks in copper pipes for years before building the putative plaintiffs' homes. Further, the complaint alleged that either the builder and/or their contractors have tested the water and pipe in the area, and were aware of the potential for problems with using copper pipe.

Common questions of law and facts alleged included, among others: whether the copper pipe was defective for the water conditions in the area; whether defendants had notice, and to what degree, of those conditions; whether section 896, subdivision (a)(14) or (15) was violated by using the pipe; whether the Hovnanian

3

entities are alter egos or otherwise jointly liable; whether any defenses raised are meritorious; whether the copper pipe has corroded, or needs to be removed or replaced.

The causes of action included in the complaint included violation of standards of residential construction under the Act, breach of express warranties, and breach of implied warranties. Plaintiffs sought monetary, equitable, and declaratory relief on behalf of the class.

## B. Procedural History

This matter has been the subject of prior demurrers, motions to strike, appeals, and writs, mostly on the question of whether the case could proceed as a class action. Plaintiffs filed the original complaint on May 9, 2013. Defendants filed a motion to strike the class allegations, arguing, among other things, that "'construction defect actions are not suited for class actions.'" The motion was granted by the Judge Steven L. Perk, and an appeal to this court followed. (*Brasch v. K. Hovnanian Enterprises, Inc., et al.* (Aug. 19, 2015, G050131 [nonpub. opn.] (*Brasch I.*).)

This court reversed, finding defendants' claims about the unsuitability of leaky copper pipes for class action treatment to be overblown. (*Brasch I, supra,* G050131.) We ultimately concluded that based on the allegations of the complaint, the elements of a class action were sufficiently alleged. (*Ibid.*) We remanded the case back to the trial court. (*Ibid.*)

On remand, defendants again sought to strike and demur to the class allegations, based on essentially the same arguments at issue in this appeal. To say the trial judge, Judge Thierry Colaw, did not think much of the defendants' arguments is a bit of an understatement. Defendants' motion was denied. They sought writ review in this court, which we summarily denied.

4

In February 2017, plaintiffs filed for class certification based solely on the violation of the standards set forth in the Act (§ 896, subd. (a)(14), (15)), and seeking relief of replacing the pipes. The motion remains pending.

Shortly thereafter, based on new case law which interpreted the Act (but did not specifically rule on the issue of class actions), defendants filed a "renewed demurrer." They also filed a motion for judgment on the pleadings. The cases were now before Judge Glenda Sanders, who had taken over the copper pipe class actions following Judge Colaw's retirement.

While the motion was pending, the California Supreme Court ruled in *McMillin Albany, LLC v. Superior Court* (2018) 4 Cal.5th 241 (*McMillin*). Defendants argued that case stands for the proposition that class actions are excluded from the Act's scope, but the trial court rejected that argument.

Defendants again sought writ relief. Before this court ruled, the Second District issued its opinion in *Kohler*, *supra*, 29 Cal.App.5th 55. We asked the parties to brief the impact of *Kohler* on the class claims and the appropriate procedural course of action. We issued an alternative writ directing the trial court to issue an order sustaining the renewed demurrer and motion with regard to the class allegations, or show cause why a writ of mandate should not issue. According to plaintiffs, the defendants were less than completely forthcoming about the narrow scope of their class claims during the writ proceeding.

Upon remand, the parties submitted briefs regarding *Kohler*. Plaintiffs, in addition to other arguments, sought leave to amend their complaint. Following argument, Judge Sanders issued an order striking the class allegations, although stated she disagreed with *Kohler*'s analysis. A timely notice of appeal was filed by plaintiffs.

5

II

DISCUSSION

A. *Appealability and Standard of Review*

Defendants do not take issue with plaintiffs' contention that this matter is appealable under the death knell doctrine, and we agree. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 762.) Our standard of review is de novo on issues related to the pleadings. (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 53-54.)

B. *Overview of the Act*

The Act was passed in 2002 with the intent to comprehensively reform construction defect litigation for individual residential units. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 382, fn. 16; *McMillin, supra*, 4 Cal.5th at p. 250.) The Act was not only intended to abrogate certain prior court decisions, but "to go further and supplant the common law with new rules governing the method of recovery in actions alleging property damage." (*McMillin*, at p. 247.)

"The Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*McMillin, supra*, 4 Cal.5th at pp. 246-247.)

The Act consists of five chapters, which, respectively, provide definitions (§ 895); define standards for building construction (§§ 896-897); govern builder obligations, including warranties (§§ 900-907); sets forth a prelitigation dispute resolution process (§§ 910-938); and describes procedures for litigation (§§ 941-945.5). (*McMillin, supra*, 4 Cal.5th at p. 250.)

*C. Kohler*

*Kohler* addressed numerous provisions of the Act at length, but we begin our discussion of the case with its factual context. The plaintiffs were both owners in a condominium dwelling that had pressure balancing valves and mixing caps manufactured by Kohler. The valves and caps were installed during construction. The purpose of these devices was to regulate water flow and temperature, and according to the plaintiffs' allegations, they were failing. They filed a putative class action against Kohler alleging claims under the Act. (*Kohler*, *supra*, 29 Cal.App.5th at p. 60.)

Kohler eventually filed a motion for summary judgment or adjudication on threshold legal issues. The court granted summary adjudication on most of the plaintiffs' claims, but allowed them to maintain claims under the Act. (*Kohler*, *supra*, 29 Cal.App.5th at pp. 60-61.) "Kohler then filed a 'motion re anti-class certification . . .'" arguing none of the remaining causes of action could be certified as a class action. (*Id.* at p. 60.) The court certified the ruling for appellate review, which the Second District summarily denied. Kohler then sought review in the California Supreme Court, which granted review and transferred the matter back to the Second District with directions to vacate the order and to issue an order directing the trial court to show cause. (*Id*. at p. 61.)

The essence of the issue before the Second District in *Kohler* was whether the Act permitted a class action against the manufacturer of allegedly defective plumbing fixtures installed during residential construction. The court examined section 896 which "provides a  detailed and comprehensive set of standards for residential construction, addressing water, structural, soil, fire protection, plumbing and sewer, and electrical systems issues, and issues regarding other areas of construction; it also provides various time periods within which an action must be brought, depending upon the standard alleged to have been violated." (*Kohler*, *supra*, 29 Cal.App.5th at p. 62.) The court

7

interpreted section 896's language as meaning that a homeowner alleging a construction defect may only bring a claim under the Act, with certain specified exceptions. (*Ibid.*)

One of those exceptions was set forth in section 896, subdivision (g)(3)(E), which states: "This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure." A manufactured product is "a product that is completely manufactured offsite." (§ 896, subd. (g)(3)(C).)

The *Kohler* court also discussed section 897, which states: "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." The court interpreted this as a "catchall provision" and stated the key difference between sections 896 and 897 was "that a claim brought under section 896 need only allege a violation of one or more of the specified standards . . . , while a claim under section 897 must allege both a defective function or component of the home and damage caused by that defect." (*Kohler*, *supra*, 29 Cal.App.5th at p. 63, fn. omitted.)

In the litigation procedure chapter, the court noted, two sections directly address the exclusivity of, and exceptions to, the Act: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. Damages awarded for the items set forth in Section 944 in such other cause of action shall be reduced by the amounts recovered pursuant to Section 944 for violation of the standards set forth in this title." (§ 943, subd. (a).) Section 944 discusses remedies and measure of damages: "If a claim for damages is made under this title, the homeowner is only entitled to damages for the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost

8

of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute."

The *Kohler* court discussed section 931, which is part of the prelitigaton procedure chapter of the Act, at length. That section states, in full: "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, *class actions*, other statutory remedies, or fraud-based claims, the claimed unmet standards shall be administered according to this part, although evidence of the property in its unrepaired condition may be introduced to support the respective elements of any such cause of action. As to any fraud-based claim, if the fact that the property has been repaired under this chapter is deemed admissible, the trier of fact shall be informed that the repair was not voluntarily accepted by the homeowner. As to any *class action* claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter." (§ 931, italics added.)

As the *Kohler* court noted, "the language of this section is somewhat obtuse," but observed the first sentence generally has been interpreted as providing a nonexclusive list of exclusions from the Act.[2] (*Kohler*, *supra*, 29 Cal.App.5th at pp. 66-67, citing *McMillin*, *supra*, 4 Cal.5th at p. 254; *Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 890.)

---

[2] Other cases, too, have mentioned the language of section 931, but none before *Kohler* had done so specifically in the context of whether a class action could be maintained under the Act. Those cases, essentially, are dicta with respect to this issue. (See, e.g., *Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1155-1156.)

9

*Kohler* continued: "That list of exclusions is provided in the context of explaining the application of the Act in a lawsuit that includes both claims under the Act alleging violations of the section 896 and/or section 897 standards and claims that are 'not covered by'—i.e., excluded from—the Act. Section 931 explains that the prelitigation procedures must be followed with regard to the claims under the Act, but those procedures do not apply to claims that are outside of the Act, examples of which are listed." (*Kohler*, *supra*, 29 Cal.App.5th at pp. 66-67.)

The *Kohler* court goes on to state that while class actions are a listed exclusion in the first sentence, "ambiguity is introduced" when reading the first sentence with the last. (*Kohler*, *supra*, 29 Cal.App.5th at p. 67.) Ultimately rejecting the interpretations that both parties suggested, the court came up with its own: "What, then, are we to make of the last sentence of section 931? Plaintiffs contend that this sentence specifies that class actions are allowed and waives the prelitigation procedures for those claims. But once again, plaintiffs' interpretation ignores the statutory language. We agree that the language of the last sentence could, when read in isolation, be interpreted to mean that class actions generally *are* allowed for claims under the Act. But the waiver of the prelitigation procedures provision cannot be interpreted to apply to all class actions because its plain language states that it applies only as to a specific category of class action claims: those 'that address solely the incorporation of a defective component into a residence.' (§ 931.) It is illogical to conclude that the Legislature intended the last sentence to excise the exclusion of class actions contained in the first sentence of the statute, and also intended to waive the prelitigation procedures for some class action claims (those that address solely the incorporation of a defective component into a residence), but not all class action claims. Instead, the more logical interpretation is that the last sentence, although inartfully written, carves out a limited exception to the exclusion of class actions—for 'claims that address solely the incorporation of a defective

10

component into a residence' (§ 931)—and waives the prelitigation procedures for those class action claims." (*Id.* at pp. 68-70.)

The *Kohler* court went on to determine that its own stated exception, for "'claims that address solely the incorporation of a defective component into a residence' (§ 931)" did not apply. (*Kohler*, *supra*, 29 Cal.App.5th at pp. 69-70.) The plaintiffs' claim did not "address *solely* the incorporation of a defective component into their homes. Rather, they allege that the use of the allegedly defective valves and mixer caps violated and/or caused violations of several of the standards set forth in section 896, and that they caused damage to other components in their homes." (*Id.* at pp. 71-72.) "Second, even if plaintiffs' claim could be deemed to address solely the incorporation of a defective component into their homes, that claim could not be brought under the Act because the allegedly defective component is a manufactured product, and such claims are expressly excluded. (See § 896, subd. (g)(3)(E) ['This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure'].) For this reason, we conclude that despite the class action exception in the last sentence of section 931 relating to actions solely for defective components, that exception must be interpreted to include its own exclusion for claims that seek to recover solely for the incorporation of a defective manufactured product— i.e., 'a product that is completely manufactured offsite' (§ 896, subd. (g)(3)(C))." (*Id.* at p. 72.)

The *Kohler* court summarized its holding: "In short, we hold that the Act does not permit class action claims except when those claims address solely the incorporation into the home of a defective component other than a product that is completely manufactured offsite." (*Kohler*, *supra*, 29 Cal.App.5th at p. 72.) This "exclusion from the exception," as Judge Sanders put it, was arrived at by combining section 931 with section 896, subdivision (g)(3)(C), which defines a manufactured product.

11

Judge Sanders ultimately sustained defendants' demurrer/motion for judgment on the pleadings despite her "concerns" with *Kohler*'s interpretation of the Act. Those concerns included "(1) the lack of any express prohibition of class actions in the Act, including in § 943 which specifically deals with other claims prohibited under the Act; (2) the potential absurdity created by interpreting the first sentence of § 931 as a prohibition of class actions in the context of the Act and interpreting the last sentence of § 931 as excepting a particular type of class action from compliance with the Act's prelitigation procedures . . . ."

### D. Application of Section 931

We share Judge Sanders's concerns, but they are not the basis of our ruling. We need not decide whether *Kohler* is correct that virtually all class actions are excluded from the Act (although we will express our view on that *post*). The disagreement that leads to our reversal of the order at issue today is *Kohler*'s "exclusion from the exception" which combined the last sentence of section 931 with section 896, subdivision (g).

The last sentence of section 931 states: "As to any class action claims that address solely the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter." Section 896, subdivision (g)(3)(E), states: "This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure," while subdivision (g)(3)(C) defines a "manufactured product" as "a product that is completely manufactured offsite." *Kohler* took what it read was a broad prohibition on class actions from the first sentence of section 931 and combined it with what it deemed an exception in the last sentence for "the incorporation of a defective component into a residence . . . ." Then *Kohler* used the definition of a manufactured product to remove "products

12

manufactured completely offsite" from this exception. (*Kohler*, *supra*, 29 Cal.App.5th at pp. 70, 72.)

We respectfully disagree with *Kohler*'s conflation of section 931 and section 896, subdivision (g), because subdivision (g) does not apply in every case. The preamble to section 896, subdivision (g), states it applies "to issues regarding other areas of construction." As stated in *Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1222: "We conclude that section 896, subdivision (g)(3)(E) is intended to bar actions in which the claimant seeks to recover for a defect in a product that *does not* violate one of the standards set forth in section 896." Standards for plumbing lines and components are included in subdivision (a).

Plaintiffs in this case allege violations of section 896, subdivision (a), and therefore, this case does not fall within the scope of any bar to class action treatment. We find that by combining the language in section 931's final sentence with section 896, subdivision (g)(3)(E), *Kohler* placed more limitations on class actions than the Act (may have) intended.

That leads us to the next question – assuming class actions are correctly limited under the Act to the narrow exception carved out in the final sentence of section 931 – does this complaint qualify? Is this a claim "'that addresses *solely* the incorporation of a defective component into a Residence'"? (*Kohler*, *supra*, 29 Cal.App.5th at pp. 71-72.) The answer is clearly yes. The complaint alleges defendant violated the Act by "the incorporation, at the time of original construction, of defective copper pipe into Plaintiffs' and class members' residences, which is leaking and/or corroding so as to impede the useful life of the system." The common questions of fact that render the case suitable for class treatment, according to the complaint, include "[w]hether California Civil Code sections 896(a)(14) and/or (15) were violated by the incorporation, selection, design, manufacture, supply and/or utilization of the pipe at issue herein[]"? It is indisputable that this case is about the incorporation of a defective

13

component into plaintiffs' homes at every stage of the process. We therefore find that, to the extent *Kohler* is otherwise correct, this falls into the exception *without* the exclusion drawn from section 896, subdivision (g)(3). At a minimum, that exclusion does not apply here.

*E. Other Issues Raised by Kohler*

Although we need not reach this issue to reverse the order in question here, we feel we cannot let the opportunity pass to address what we view as other questions raised by *Kohler*. First, we find it unlikely that the Legislature, if it had intended a broad exclusion on class actions, would not have said so clearly and directly, rather than including a cryptic mention in the prelitigaton dispute resolution chapter. The cases that read the first sentence of section 931 as such an exclusion did not directly face this issue, prior to *Kohler*, and their comments were dicta.

Second, the first sentence of section 931 is so badly drafted that it is difficult to know what to make of it – it does not make sense internally. Consider only the first part of it: "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims . . . ." (§ 931.) If this were a question on a logic exam asking "which does not belong"? The only possible answer would be "class actions." The first clause refers to "causes of action or damages," and then states "including, without limitation . . . class actions." But a class action is neither a cause of action nor damages. It is a procedural mechanism to try similar cases together in order to, among other things, preserve scarce judicial resources.

That leads us to our third question – why would the Legislature want to prohibit nearly all class actions in construction defect cases anyway? If there are 150 homes with the same defect, how can it possibly make sense to try 150 cases? We understand why homebuilders, developers, and contractors want it – it can be nearly

14

impossible for a single homeowner to find an attorney to take on a case of relatively low value. But such cases are a significant part of the reason why the class action mechanism exists.

Fourth, even assuming that was the Legislature's intent, why make an exception for "claims that address solely the incorporation of a defective component into a residence"? (§ 931.) Why are those claims sufficiently different from other types to warrant class treatment?

We believe the most likely answer is a drafting error, but whatever the reason for the uncertainty that section 931 creates, we encourage the Legislature to amend the statute to clarify this issue. It is, we believe, one that should be resolved by the Legislature rather than leaving the courts to torture logic and "jerry-rig" a solution.

III

DISPOSITION

The order is reversed. Plaintiffs are entitled to their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

15